# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT ALLEN KING,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case Number: 09-14851

DAVID M. LAWSON
UNITED STATES DISTRICT COURT
JUDGE

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 9) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 10)

Plaintiff, Robert Allen King, through his counsel, appeals the Social Security Commissioner's decision denying him disability insurance benefits. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

## I. Background

On January 30, 2007, plaintiff filed an application for disability insurance benefits in which he claimed that he became disabled on June 1, 2006 due to diabetes, high blood pressure, a mild heart attack, high cholesterol, arthritis, depression, and osteoporosis. (Tr. 79-88, 100).

Plaintiff served in the military from 1981 to 2002; he currently receives disability

compensation from the Department of Veterans Affairs for "service connected disabilities shown to be permanently & totally disabling." (Tr. 82, 138). Plaintiff also receives a military pension. (Tr. 32, 39-40). After plaintiff left the military, he worked in construction until 2005. (Tr. 31).

Plaintiff's application for disability insurance benefits was denied on April 4, 2007. (Tr. 57). Plaintiff filed a timely request for an administrative hearing. (Tr. 62). Plaintiff appeared, with counsel, for an administrative hearing before Administrative Law Judge Patricia S. McKay on April 16, 2009. (Tr. 22). On May 20, 2009, ALJ McKay issued a decision affirming the denial of benefits. (Tr. 7).

ALJ McKay applied the five-step sequential analysis set out in the Social Security Agency's regulations to determine whether plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date. (Tr. 12). At steps two and three, ALJ McKay found that plaintiff has the severe impairments of rheumatoid arthritis, mild peripheral neuropathy, lumbar degenerative disc disease with osteoporosis, obesity, and depression. (Tr. 12). ALJ McKay also concluded at step two that plaintiff's high cholesterol, hypertension, ischemic heart disease, sleep apnea, and diabetes are controlled with medication and, therefore, are non-severe impairments. (Tr. 12-13). At step four the ALJ decided that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Based on the evidence presented by plaintiff and the testimony from the vocational expert, the ALJ concluded that plaintiff has the residual functional capacity to perform light work with the following limitations: no more than occasional climbing, crouch, crawling, kneeling, stooping, bending, or balancing, no more than frequent use of lower extremities for foot controls or

upper extremities for reaching, gripping, grasping, fingering, or feeling, a sit/stand option, no production line work or routine and repetitive tasks, occasional contact with the general public and co-workers, and should not be closely supervised. (Tr. 14-15).

In concluding that plaintiff had the residual capacity to perform light work, the ALJ acknowledged that plaintiff is on 100% disability from Veterans Affairs but, in light of the entire record, the ALJ decided that plaintiff's description of his symptoms and limitations is "inconsistent and unpersuasive, and is not supported by the medical evidence of record." (Tr. 15).

After receiving the ALJ's unfavorable decision, plaintiff appealed to the Appeals Council but the Appeals Council denied his request for review. (Tr. 1-4). Subsequently, plaintiff filed the instant complaint for judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

On December 14, 2009, the Honorable David M. Lawson referred this case to this court for the resolution of all non-dispositive motions and the issuance of a Report and Recommendation. (Doc. No. 3).

Plaintiff filed his motion for summary judgment on March 15, 2010. (Doc. No. 9). The Commissioner filed his motion for summary judgment on May 4, 2010. (Doc. No. 10). This case is now ripe for adjudication.

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

### III. Analysis

#### A. Veterans Affairs Disability Rating

Plaintiff first argues the ALJ erred by not disclosing the weight she accorded to the Veterans Affairs decision that plaintiff is 100% disabled. (Doc. No. 10, Pl.'s MSJ 9). Plaintiff argues that the ALJ should have considered the VA disability rating and disclosed the weight given to it. *Id.* at 10. Plaintiff also cites cases from other circuits in which the courts have held that a VA disability rating is entitled to great weight unless the ALJ gives valid reasons for discounting the rating. *Id.* at 10.

The Commissioner notes that plaintiff has not cited to any authority from the Sixth Circuit to support his contention that the ALJ should have afforded the VA disability rating great weight. (Doc. No. 10, Def.'s MSJ 13). Further, the Commissioner argues, the ALJ considered the VA disability determination but explained that based on the medical evidence plaintiff was not disabled under the Social Security Act. *Id.*

4

Disability determinations made by other governmental agencies are not binding on a social security determination. The applicable Social Security regulation, 20 C.F.R. § 404.1504, states:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

In addition, there is no Sixth Circuit authority requiring the ALJs to afford VA disability determinations any weight. Nonetheless, the ALJ in this case considered plaintiff's disability rating from the VA but refused to give it significant weight because the VA's determination, according to the ALJ, was not consistent with the medical evidence presented by plaintiff. The ALJ's consideration of the VA's disability determination stands in contrast to two of the cases cited by plaintiff for the proposition that a VA disability rating must be considered, in which the ALJs did not consider or comment on the VA disability rating at all. *See Welch v. Barnhart*, 337 F.Supp.2d 929, 936 (S.D. Tex. 2004) (case remanded to the ALJ for consideration of the VA disability determination when the ALJ "totally disregarded Welch's VA disability determination . . . ."); *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002) (on remand the ALJ must consider the VA disability rating and accord it great weight unless the ALJ gives valid reasons for not doing so). In the third case, which is analogous to the facts presented here, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001), the ALJ was found to not have erred when he discounted the VA's disability determination because the ALJ considered the determination and gave valid reasons for according it diminished weight. Because the ALJ in this case considered the VA's disability determination and gave valid reasons for discounting it, even though she was not required to do so, no reversible error occurred.

**B. The Opinions of Plaintiff's Treating Physicians**

Plaintiff next argues that the ALJ erred when she failed to give controlling weight to the opinions of Dr. Henein and Dr. Barker, both of whom opined that plaintiff is disabled. (Doc. No. 9, Pl.'s MSJ 9). Plaintiff contends that the doctors' treatment records support their opinions that plaintiff is disabled and, therefore, the ALJ should have afforded their opinions controlling weight. *Id.* at 14-20.

The Commissioner responds that the ALJ properly discounted Dr. Henein and Dr. Barker's opinions because the opinions were vague, the doctors simply stated that plaintiff would have a difficult time performing full-time work, and their opinions were contradicted by their own treatment records. (Doc. No. 10, Def.'s MSJ 9).

The treating source regulation, 20 C.F.R. § 404.1527(d)(2), generally requires the ALJ to accord controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ rejects the treating physician's opinion, he or she must give good reason for doing so. *See* 20 C.F.R. §404.1527(d)(2).

In this case, the ALJ wrote the following about her consideration of the treating physicians' opinions:

> Treating opinions are not necessarily granted controlling weight; factors such as length of treatment relationship; nature and extent of the treatment relationship; supportability; consistency; and specialization may be considered (20 CFR 404.1527(2)). Dr. Henein reported, in June 2008, that the claimant has severe rheumatoid arthritis, fatty liver, and osteoporosis, causing him significant disability and leaving him unable to work (Exhibit 18F). Also, Dr. Barker, the claimant's primary care physician, opined that the claimant could not commit to a full-time job because he was unable to determine from day to day how severe his pain would be (Exhibit 19F).

>Dr. Henein's own treatment records indicate that the claimant was not significantly disabled, as discussed above, and therefore do not lend support to her opinion. With regard to Dr. Barker, treatment records indicate significant gaps between office visits. The undersigned additionally notes that the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Moreover, although these doctors stated that the claimant is 'disabled,' it is not clear that either of them was familiar with the definition of 'disability' contained in the Social Security Act and regulations. Specifically, it is possible that these doctors were referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision.

(Tr. 17).

The ALJ did not err when she discounted Dr. Henein and Dr. Barker's opinions that plaintiff is too disabled to work. The ALJ gave many reasons, supported by medical evidence, as to why she did not give the doctors' opinions controlling weight. The ALJ found that the doctors' opinions were inconsistent with the medical evidence in the record and she identified other valid reasons why she did not fully credit the doctors' opinions. The ALJ, therefore, did not commit reversible error.

**C. Plaintiff's Credibility**

Plaintiff also contends that the ALJ erred in finding that his statement concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Doc. No. 9, Pl.'s MSJ 10-14). Plaintiff argues that the ALJ used the fact that he worked after being diagnosed with rheumatoid arthritis to discount his testimony when the ALJ should have used it to bolster his testimony, given his long work history and no evidence of malingering. *Id.* at 11. Plaintiff also disputes the way the ALJ's finding that his daily activities undercut his testimony. *Id.* at 12.

7

The Commissioner responds that the ALJ properly evaluated plaintiff's credibility, which was undermined by the medical evidence in the record. (Doc. No. 10, Def.'s MSJ 14). The Commissioner argues that plaintiff was less than fully credible because his allegations conflicted with the medical evidence and his reported daily activities. *Id.*

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms but she concluded that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. (Tr. 15).

The ALJ specifically found that plaintiff's statements that he has severe and persistent physical symptoms, including daily pain, was inconsistent with the medical records from Dr. Henein and Dr. Baker. (Tr. 16). An examination of these treatment records show that plaintiff's symptoms improved with treatment and plaintiff reported low levels of pain or no pain during many appointments with Dr. Barker. (Tr. 389-391, 393-411). This medical evidence contradicts plaintiff's statements regarding his physical symptoms, and the ALJ properly discounted plaintiff's testimony given the inconsistencies.

The ALJ also found that the fact that plaintiff worked for years after his diagnosis with rheumatoid arthritis contradicted plaintiff's clam that his symptoms were debilitating. (Tr. 16). The fact that plaintiff continued to work in the construction industry, in a physically demanding job, for years after his diagnosis clearly undercuts plaintiff's credibility as to the intensity and persistence of his symptoms. In addition, according to his medical records, his condition improved over time with treatment. The rational inference that can be drawn from these two pieces of conflicting evidence is that plaintiff's testimony regarding the intensity and persistence of his physical symptoms was not fully credible, which is exactly what the ALJ concluded.

Further, the ALJ correctly concluded that plaintiff's own statements about his daily activities contradicted his position that his impairments are disabling. Plaintiff is able to care for his own needs, drive, grocery shop with his mother, and attend church. The ALJ properly considered plaintiff's reported daily activities in assessing his testimony concerning the intensity, persistence, and limiting effects of his symptoms, *see* 20 C.F.R. § 404.1529(a), and the ALJ could rationally conclude that plaintiff's ability to do the daily activities he reported contradicted his claim that his symptoms are disabling. In addition, the ALJ did not consider plaintiff's daily activities in isolation in considering whether plaintiff was credible. The ALJ also considered the medical records, which contradicted plaintiff's testimony, and his work history, which also contradicted his assertion that his symptoms were disabling.

Next, plaintiff takes issue with the ALJ's finding that plaintiff's description of his symptoms was vague and general, which led the ALJ to comment that the lack of specificity made plaintiff less convincing. (Doc. No. 9, Pl.'s MSJ 14). Plaintiff contends that the ALJ should have asked him additional questions if she was unsure of his symptoms and limitations. *Id.* The Commissioner argues that plaintiff bore the burden of showing that he is disabled. (Doc. No. 10, Def.'s MSJ 15).

The ALJ's observation that plaintiff's description of his symptoms was "quite vague and general, lacking the specificity which might otherwise make it more convincing," is one of the ALJ's many reasons why she did not find plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms credible. The ALJ did not have an obligation to ask plaintiff questions about his symptoms in order to elicit a more specific description of his symptoms. As argued by the Commissioner, plaintiff bears the burden of proof; therefore it is not the responsibility of the ALJ to make plaintiff's case that he is disabled for him. *See* 20 C.F.R. § 404.1512(a) (" In

9

general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled.").

Lastly, plaintiff argues that the ALJ's finding that his testimony regarding his symptoms conflicted with the fact that his doctors never instructed him to limit his activities is contradicted by letters that Dr. Barker and Dr. Henein wrote, which stated that plaintiff is totally disabled. (Doc. No. 9, Pl.'s MSJ). The Commissioner contends that the ALJ properly noted that there is no evidence in the record that plaintiff's doctors advised him to restrict his activities and the letters plaintiff references merely give the doctors' opinions that plaintiff is disabled, but are not evidence that they instructed plaintiff to limit his activities. (Doc. No. 10, Def.'s MSJ 16).

This is no evidence in the record that plaintiff's doctors advised him to limit his activities. The letters that Dr. Barker and Dr. Henein wrote express their opinions that plaintiff is disabled, but neither letter contains any advised restriction on plaintiff's daily activities and the letters do not contain any work restrictions. (Tr. 381, 399). Given the absence of evidence on any limitations prescribed by his doctors, the ALJ did not err by commenting that plaintiff had never been advised to limit his activities.

### D. Plaintiff's Mental Health

Plaintiff argues that the ALJ improperly down played the severity of his depression because his primary care physician treats his depression and he has not sought mental health treatment from a specialist. (Doc. No. 9, Pl.'s MSJ 20). Plaintiff also notes that he was evaluated by a psychologist at the request of the SSA, and that psychologist diagnosed him with depressive disorder and intermittent explosive disorder. *Id.* at 20-21. The psychologist gave plaintiff a Global Assessment of Functioning score of 47. *Id.* at 21.

The Commissioner responds that the ALJ correctly noted that plaintiff had not treated with a mental health specialist. (Doc. No. 10, Def.'s MSJ 16). The Commissioner also argues that plaintiff was medicated for his depression intermittently and Dr. Barker often noted in his treatment notes that plaintiff displayed a normal mood and affect, both of which are inconsistent with debilitating depression. *Id.* at 16-17.

The ALJ made the following findings regarding plaintiff's mental health:

> With regard to the claimant's mental impairment, the claimant presented to the consultative psychological exam with a document listing his impairments. He advised Ms. Bonanno that he has symptoms of depression, including sleep and appetite disturbances, irritability, difficulty concentrating, a depressed mood, and lack of motivation. Further, he advised difficulty getting along with others, and episodes of road rage (Exhibit 16F). Yet, the claimant testified that he treats only with his primary care physician for his depression. The fact that the claimant has not sought mental health treatment from a specialist generally suggests that his symptoms are not as severe as alleged. Further, despite the claimant's statements to Ms. Bonanno of not liking people, Exhibit 4E reveals that the claimant visits with others on a generally regular basis. The DDS psychological consultant opined that, based upon the record, the claimant has moderate limitations in memory, concentration, and social interaction secondary to depressive disorder, yet retains the capacity to sustain simple repetitive work particularly if contact with other people is minimal (Exhibit 4F). The undersigned finds this to be consistent with the record, and has incorporated these findings into the residual functional capacity.

(Tr. 18).

The ALJ did not commit reversible error in evaluating plaintiff's mental health. The ALJ considered all of the evidence of plaintiff's depression, including the absence of evidence that plaintiff had treated with a specialist for his depression. From the lack of evidence, and the evidence that plaintiff had been intermittently prescribed medication for his depression, the agency's evaluating psychologist's opinion, and plaintiff's testimony, the ALJ concluded that plaintiff's depression was not disabling. This conclusion is well-supported by evidence in the record. In addition, an ALJ is not required by statute, regulation or authority to place substantial weight in a

11

GAF score. *See Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648 (6th Cir. Feb. 9, 2006). Therefore, the ALJ's failure to mention whether she considered the GAF score the agency psychologist assigned to plaintiff is irrelevant. The ALJ's findings and conclusions regarding plaintiff's mental health are supported by substantial evidence in the record and, therefore, her decision that his depression is not disabling should not be disturbed.

**E. The Vocational Expert's Hypothetical Question**

Plaintiff contends that the hypothetical the ALJ posed to the vocational expert was incomplete because it did not include his mental impairments. (Doc. No. 9, Pl.'s MSJ 24-25). Specifically, plaintiff argues that the hypothetical question the ALJ posed to the vocational expert conflicted with the ALJ's finding that he is moderately limited in concentration, persistence, or pace and the ALJ did not incorporate Dr. Brundage's summary conclusions into the hypothetical. *Id.* at 28-33).

The Commissioner responds that the hypothetical question posed incorporated plaintiff's restrictions as to concentration, persistence, and pace by including a restriction that plaintiff not perform production line work. (Doc. No. 10, Def.'s MSJ 18). The Commissioner also argues that the hypothetical question incorporated Dr. Brundage's functional capacity assessment and there is no authority to support plaintiff's contention that the summary conclusions must also be incorporated. *Id.* at 18-19.

In deciding whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). The hypothetical question, however, must accurately describe the claimant's

physical and mental impairments. *See id.*

In this case, the ALJ properly incorporated plaintiff's limitations into the hypothetical posed to the vocational expert. The ALJ incorporated plaintiff's moderate limitation in concentration, persistence, or pace by including a restriction on production line work, which accounts for any trouble plaintiff would have meeting quotas or working at a persistent pace. (Tr. 47-48). Also, the ALJ incorporated Dr. Brundage's functional capacity assessment, which was that plaintiff can do unskilled work, has moderate limitations in memory, concentration, and social interaction but retains the capacity to do simple repetitive work if contact with other people is minimal. (Tr. 47-48, 181). The court notes that Dr. Brundage's summary conclusions are incorporated into her functional capacity assessment: she found that in some categories that plaintiff was not significantly limited and in others he was, at most, moderately limited. (Tr. 179-180). The hypothetical posed by the ALJ to the vocational expert accurately described plaintiff's mental and physical impairments; no reversible error occurred.

## IV. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail

to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 29, 2010

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 29, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan